**GENERAL COMMITTEE OF ADJUSTMENT, GO–386, et al., Appellees,**

v.

**BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, et al., Appellants.**

**Nos. 01–7068 and 01–7069.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 14, 2002.

Decided July 19, 2002.

Rehearing En Banc Denied Sept. 9, 2002.

Ralph J. Moore, Jr. argued the cause for appellants. With him on the briefs was Donald J. Munro.

Mark W. Pennak, Attorney, U.S. Department of Justice, argued the cause for amicus curiae United States of America, urging reversal. With him on the brief was William G. Kanter, Deputy Director, U.S. Department of Justice.

Robert J. DeLucia and Harry A. Rissetto were on the brief for amicus curiae Airline Industrial Relations Conference, urging reversal.

John O'B. Clarke, Jr. argued the cause for appellees General Committees of Adjustment.

Clinton J. Miller III argued the cause for appellee United Transportation Union.

Jeffrey A. Bartos was on the brief for amici curiae Transportation Communications International Union and Brotherhood of Locomotive Engineers, urging affirmance. Joseph Guerrieri, Jr. entered an appearance.

Before: SENTELLE and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This is an appeal from summary judgments entered in two separate actions consolidated by the District Court. *Burlington Northern and Santa Fe R.R. Co. v. United Transp. Union,* 141 F.Supp.2d 49 (D.D.C.2001). In District Court case No. 99–cv–3117, the Burlington Northern & Santa Fe Railroad Co., et al. (collectively "BNSF" or "the carriers") sued the United Transportation Union and the International Brotherhood of Locomotive Engineers (collectively "UTU") seeking an injunction ordering the unions and subdivisions thereof to bargain with each plaintiff railroad on a craft-wide basis with respect to issues in the current round of bargaining. In District Court case No. 00–cv–0043, three "general committees of adjustment" of the UTU sued BNSF, et al., seeking a declaratory judgment of the right of the committees to decline to participate in multi-employer bargaining along with further declarations on related points. Each litigating side moved for summary judgments in both cases. The District Court entered summary judgment in favor of the UTU and against the carriers in both cases, ordering entry of final judgment against the carriers and, in an amended judgment, declaring that "general committees are the parties with whom the defendant [BNSF] must bargain." Because the District Court's application of law depart-

ed from binding Circuit precedent, specifically *Brotherhood of Railroad Trainmen v. Atlantic Coast Line Railroad*, 383 F:2d 225 (D.C.Cir.1967), we vacate the judgments below and remand for further proceedings consistent with this opinion.

## I. Background

Negotiations between carriers and their employees are governed by provisions of the Railway Labor Act, 45 U.S.C. §§ 151–188 (1994 & Supp. V 1999) ("RLA" or "the Act"). Negotiations between them in the current controversy are part of a national "movement" in the railroad industry for changes in wages and other conditions of employment. Under the RLA, each party in collective bargaining is to designate a representative. 45 U.S.C. § 152 Third. The UTU is the designated representative of the crafts of conductors, trainmen, and firemen on each of the nation's major railroads, including BNSF. The UTU, by its constitution, includes within its organizational structure "committees of adjustment" authorized by the union constitution to deal with grievances. The chairs or in some cases other representatives of local committees of adjustment are collected into "General Committees of Adjustment," which operate above the local level and "have authority to make and interpret agreements with representatives of transportation companies covering rates of pay, rules, or working conditions," UTU Const. art. 85. Eleven such General Committees represent BNSF employees. The three General Committees that are parties to this litigation announced their election to opt out of "national handling" of negotiations with all carriers and sought instead to "bargain locally" with BNSF.

BNSF insisted on national handling and refused to bargain separately with the General Committees. BNSF sued the union, seeking a declaratory judgment and compulsion of the union to bargain with it on a national level. The General Committees sued BNSF, seeking declaratory judgment and compulsion of the carrier to bargain with them separately. The District Court ordered the cases consolidated. The parties cross-moved for summary judgment. The District Court ruled in favor of the General Committees and against the carrier in both cases and entered judgment against BNSF. 141 F.Supp.2d at 60. BNSF appealed.

## II. Analysis

■ Although both parties submitted complex briefs and arguments in the District Court and before us, the issue is a relatively straightforward one: when and under what circumstances may a carrier or union under the RLA compel an opposing party to bargain on a national or local level, as chosen by the party seeking to compel the negotiations? Negotiations under the RLA historically have included both national and local negotiation. *See, e.g., American Railway and Airway Supervisors Ass'n v. Soo Line R.R.*, 891 F.2d 675 (8th Cir.1989); *Brotherhood of Railroad Trainmen v. Atlantic Coast Line Railroad*, 383 F.2d 225 (D.C.Cir.1967); *Alton and Southern Railway Co. v. Brotherhood of Maintenance Way Employees*, 928 F.Supp. 7 (D.D.C.1996), *appeal dismissed as moot*, No. 96–7104 (D.C.Cir. Feb. 10, 1997). At various times and under various circumstances, unions and carriers have attempted to impose one method or the other on each other. *See, e.g., Soo Line*, 891 F.2d at 677–78 (union seeking to require national bargaining); *Atlantic Coast Line*, 383 F.2d at 228 (carrier seeking to impose national handling); *Alton and Southern*, 928 F.Supp. at 20 (carrier seeking to impose "bargain[ing] on a multiemployer basis").

The District Court viewed the issue as involving "[t]he relationship between sections 2 First and Third" of the RLA. 141 F.Supp.2d at 53 (citing 45 U.S.C. § 152 First and Third). Section 2 First makes it "the duty of all carriers ... to exert every reasonable effort to make and maintain agreements ... to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof." Section 2 Third declares the right of representation and states that "[r]epresentatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives of the other ...." Because *Atlantic Coast Line* had not addressed the question of bargaining methodology in terms of Section 2 Third, and because the District Court saw that subsection as governing the issue before it, the court concluded that *Atlantic Coast Line* did not govern the issue. It therefore deemed the issue to be an open one in this Circuit, and ruled that the railroads were attempting to interfere with the selection of a bargaining representative by the employees. 141 F.Supp.2d at 53. It further ruled that the General Committees were the designated representatives of the employees for Section 2 purposes and entered judgment in favor of the Committees. *Id.* at 58. The railroads, arguing that the union itself, not the Committees, was the certified representative of the employees, appealed.

 Upon review, we conclude that Section 2 Third is not the governing provision. While the railroad is correct that the employees have designated the union as their representative, we further do not conclude that this fact by itself resolves this dispute. The union, by its constitution, does contemplate bargaining by the General Committees. Arguably, the contents of that constitution change nothing, but the relevance and weight of that particular fact is not yet ripe for decision. The issue before us, however, is the scope of bargaining—that is, whether it is locally or nationally handled—not the related but distinct question of designation of the bargaining representative. Thus, our decision in *Atlantic Coast Line* provided governing precedent on the question before the District Court. Under *Atlantic Coast Line*, the propriety of imposing national or local handling of bargaining issues is to be determined by "an issue-by-issue evaluation of the practical appropriateness of mass bargaining on that point and of the historical experience in handling any similar national movements." *Atlantic Coast Line*, 383 F.2d at 229. As the District Court in this case correctly understood, *Atlantic Coast Line* has been interpreted "to mean that the court should make an objective assessment of the parties' past bargaining practices." 141 F.Supp.2d at 56. This was the interpretation applied in *Alton and Southern*, and, in our view, it is the correct one. The District Court in the present case departed from that test by applying a subjective good faith test arguably consistent with the Eighth Circuit's treatment of the issue in *Soo Line*, because it saw Section 2 Third as potentially inconsistent with a result applying Section 2 First under *Atlantic Coast Line*. But the recognition of designated representatives and the prohibition against interference with that designation under Section 2 Third do not control. Rather, the issue is the *scope* of bargaining (national or local). *Atlantic Coast Line*, while relatively old, remains the law of this Circuit and "binds us, unless and until overturned by the court en banc or by Higher Authority." *Save Our Cumberland Mountains, Inc. v. Hodel*, 826 F.2d 43, 54 (D.C.Cir.1987) (Ginsburg, Ruth Bader, J., concurring).

Therefore, rather than basing its determination on the subjective good faith of one of the parties, the District Court should have employed the test of *Atlantic Coast Line* and reviewed objectively the bargaining history of the parties. Only after application of the *Atlantic Coast Line* test should the court have determined whether there was no genuine issue of material fact, such that summary judgment was appropriate. As a result, we hold that the District Court improvidently applied a subjective test inconsistent with Circuit law.

Because the District Court decided this case on summary judgment we review *de novo* the issues before the District Court, and determine whether there is any genuine issue of material fact. *See, e.g., Atlas Air, Inc. v. Air Line Pilots Ass'n*, 232 F.3d 218, 222 (D.C.Cir.2000). This review naturally entails our determining whether the District Court correctly identified and applied the governing law. Because the District Court did not apply the test under *Atlantic Coast Line*, we hold that it did not properly apply the governing law. We therefore vacate the judgment below and remand the matter to the District Court. While theoretically we could determine *de novo* the question of the existence of genuine issues of material fact, in this case remand is appropriate rather than *de novo* determination, because the parties may make further submissions conforming to the *Atlantic Coast Line* test. *Cf. Summers v. Department of Justice*, 140 F.3d 1077, 1080 (D.C.Cir.1998) (declining to decide *de novo* summary judgment issues in a FOIA case involving extensive record review). On remand, we would remind the parties that in actions for declaratory judgment invoking the RLA, jurisdiction of the court is limited by general declaratory judgment law, and that a dispute appropriate for resolution under the declaratory judgment act "must not be nebulous or contingent, but must have taken on fixed

and final shape." *Atlas Air*, 232 F.3d at 227 (quoting *Danville Tobacco Ass'n v. Freeman*, 351 F.2d 832, 833–34 (D.C.Cir. 1965)).

## Conclusion

The judgment below is vacated and the case remanded to the District Court for further proceedings consistent with this opinion.